**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**MELCHIZEDEK SHABAZZ**                                                          **PLAINTIFF**
**ADC #84212**

**NO. 5:03CV00401-WRW/BD**

**LARRY NORRIS,** *et al.*                                                             **DEFENDANTS**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**I.      Procedure for Objecting**

The following proposed findings and recommended disposition has been sent to United States District Judge William R. Wilson, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the proposed findings and recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time you file your written objections, include a "Statement of Necessity" that sets forth the following:

1

    1.      Why the record made before the Magistrate Judge is inadequate.

    2.      Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

    3.      An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

    Clerk, United States District Court
    Eastern District of Arkansas
    600 West Capitol Avenue, Suite A149
    Little Rock, AR 72201-3325

## II. Introduction

Plaintiff, who is currently confined to the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), commenced this pro se action while confined at the ADC's Varner Unit. Plaintiff alleges that ADC's Policy 545 ("the Policy"), which prohibits inmates from reading the Koran and presenting the Khutba (sermon) at Friday Jumu'a prayer service, unless a Muslim chaplain, Certified Religious Assistant (CRA) or other free-world Muslim is present at the service, substantially

interferes with his right to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

After an early order (#8) dismissing the case for Plaintiff's failure to exhaust administrative remedies was vacated, the Court reopened the case with the only remaining claim being Plaintiff's claim against defendants Norris, Toney, Hobbs and Yancy (raised in Varner Unit grievance 03-846) that the ADC policy 545 violates his First Amendment rights.  (#17)  Plaintiff later filed three amended complaints adding claims that: (1) the Policy violates RLUIPA (#32); (2) the Policy violates the Religious Freedom Restoration Act[1] (#33); and (3) Defendants' hiring practices favor Christians over Muslims (#46).[2]

Plaintiff seeks an order compelling Defendants to hire free-world Muslims to come to all ADC units and conduct Friday services or, in the alternative, compelling the ADC to allow Muslim inmates to conduct Jumu'a prayer services, including reading the Koran

---

[1] The Religious Freedom Restoration Act was the predecessor statute to RLUIPA. In *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157 (1997), the Supreme Court held the Act to be unconstitutional as applied to states and localities.  RLUIPA was enacted in 2000 and contains language similar to that contained in the Religious Freedom Restoration Act but narrowed the scope of the act by limiting it to laws and regulations concerning institutionalized persons or land use. See 42 U.S.C. §§ 2000cc & 2000cc-1.

[2] In one of his amended complaints, Plaintiff alleges that Defendants discriminate against Muslim inmates and that the ADC is "propagating religion when they aren't supposed to." (#46)  These claims are outside the scope of Plaintiff's grievance and, at the hearing, the Plaintiff did not present any evidence of Defendants' discrimination against Muslim inmates or of the ADC "propagating religion" except to argue that the ADC's hiring practices are discriminatory.

and giving the Khutba, when there is no Muslim Chaplain, CRA, or other free-world Muslim available to conduct the service.

The Court conducted an evidentiary hearing on September 10, 2007. Plaintiff appeared pro se and called as his witnesses himself, ADC Chaplain Eddie Sensat, and ADC Islamic Coordinator Imam Muhammed Amin. Defendants appeared through counsel and called Chaplain Sensat.

Chaplain Sensat testified that the Policy was modified in 2004 after a preliminary injunction was entered in *Malik Abdul Shabazz v. Arkansas Department of Correction, et al.*, Case No. 5:03cv00409, that required the ADC make video recorded Khutbas available to be played at Jumu'a prayer services at all ADC units. He testified that each recorded Khutba is given by someone qualified within the Muslim faith and that each unit has an adequate supply of fresh Khutbas for use at Friday prayer.

Chaplain Sensat also testified that under the Policy, Muslim inmates are not allowed to read aloud from the Koran as a part of Jumu'a prayer services. He testified that the Policy places this limitation on inmates for two reasons: (1) because permitting one inmate to read the Koran would create a security risk by placing that inmate in a position of authority over other inmates; and (2) because when they had a policy permitting inmates to read the Koran, they discovered some inmates reading additional information that they had written into the text of their Korans and others reading footnotes and commentary in addition to the text. When asked why chaplains who

monitor services could not assure that inmates were reading the Koran text as written, Chaplain Sensat testified that most chaplains lack familiarity with the Koran to know whether an inmate is reading the Koran text accurately and that they cannot follow along in their own copies of the Koran as an inmate reads because copies of the Koran have not been donated to the ADC.

Chaplain Sensat testified that there is no ADC policy that prohibits Christian inmates from reading the Bible aloud as a part of worship services. He called the lack of such a policy a "gray area," and acknowledged that at some units Christian inmates are allowed to read from the Bible and lead the choir in Christian religious services. Chaplain Sensat testified that inmates are not permitted to give sermons at Christian services.

Chaplain Sensat testified that currently there are twenty-one Christian chaplains within the ADC and only one Muslim Imam, the Islamic Coordinator. He said that the Islamic Coordinator position is the only religious-specific position in his department.[3] All other chaplains are hired based on their qualifications and are not asked about their religious affiliation during the hiring process.

The ADC's Islamic Coordinator, Imam Muhammed Amin, testified that the Jumu'a consists of two parts, the first part is the glorification of God which involves the

---

[3] The ADC is required under a previous court order to hire an at least one half-time Islamic Coordinator. Chaplain Sensat testified that the ADC currently employs one full-time Islamic Coordinator, Imam Amin.

prayer, and the second part involves the Khutba which is the sharing of community concerns. The service almost always includes a reading from the Koran. He also testified that he does not participate in the process of hiring chaplains and has not actively recruited other Muslims to apply for chaplain positions.

Mr. Shabazz testified that he has been a practicing Muslim for about eleven years. He said the video Khutbas place a burden on his ability to exercise his religious freedom because the video is a graven image which is not permitted in Muslim rituals, and because the tapes are recorded weeks in advance and do not deal with current issues in the community. Mr. Shabazz also testified that the Policy places a burden on his ability to practice a basic tenant of his religion because inmates are not permitted to read aloud from the Koran at the Jumu'a prayer service. Mr. Shabazz testified that the only proper remedy is to require the ADC to hire at least thirteen Imams who can present live Khutbas at all ADC units every week at Jumu'a prayer services, or to require the ADC to change its policy to permit inmates to read the Koran and give Khutbas that are written and previously approved by a chaplain and the Islamic coordinator.

### III. Discussion

### A. Declaratory Relief

1.   *The Khutba*

Plaintiff claims that the Policy violates his rights under the First Amendment and RLUIPA because he is not able to practice the basic tenants of his religion by hearing a

live Khutba every Friday at Jumu'a prayer. Plaintiff seeks a court order requiring the ADC to hire thirteen Imams who can present a live Khutba at every ADC unit every week at Jumu'a prayer or, alternatively, an order requiring the ADC to change its policy to permit inmates to read a Khutba that has been previously approved by a chaplain and the Islamic coordinator. Plaintiff's claim that he is entitled to a live Khutba is foreclosed by the Eighth Circuit's opinion in *Malik Abdul Shabazz v. Arkansas Department of Correction, et al.*, Case No. 5:03cv00409. In that case, Malik Abdul Shabazz (Abdul Shabazz), an inmate at the ADC's Varner Unit, brought a pro se § 1983 action alleging that his rights under RLUIPA were being violated because ADC policy 545 did not permit inmates to give the Khutba in the absence of a non-inmate Muslim leader. Abdul Shabazz sought class certification and a preliminary injunction requiring that the ADC find and pay fees and expenses of free-world Muslim religious leaders to attend and conduct services at all ADC units.

The Court held a preliminary injunction and class certification hearing in the Abdul Shabazz case. After hearing testimony, the Magistrate Judge[4] found that the plaintiff in that case had demonstrated that Defendants were placing a substantial burden on his ability to exercise his religion and had denied him any other reasonable opportunity to engage in this activity fundamental to his faith. The Magistrate Judge also found that the Defendants had not shown that the ADC's policy was the least restrictive means of

---

[4]The Honorable Jerry W. Cavaneau

furthering a compelling interest.  However, the Magistrate Judge rejected the specific injunctive relief Abdul Shabazz requested and instead  recommended that a preliminary injunction be entered requiring the ADC to provide "video recorded Khutbas given by a qualified individual of its choice to all units of the ADC each Friday that will not have a qualified individual present to perform the Khutba live."[5]  The Magistrate Judge also recommended that the Court deny class certification as moot since the preliminary injunction would apply to all inmates at the ADC.  The District Judge[6] adopted the Magistrate's report and recommendation and issued a preliminary injunction.

Abdul Shabazz appealed to the Eighth Circuit arguing that the District Court erred in limiting injunctive relief and denying class certification.  *Shabazz v. Arkansas Dept. Of Correction, et al.*, No. 04-3852, 157 Fed.Appx. 944, 2005 WL 3076462 (8th Cir. 2005). The Eighth Circuit affirmed the District Court's award of injunctive relief, holding "that the district court used the proper legal standard set forth in RLUIPA, did not clearly err in its findings of fact, and did not abuse its broad discretion in formulating the preliminary injunction."  *Id*. at 946.  The Court found that it lacked jurisdiction to hear the denial of class certification on an interlocutory appeal.

On remand to the District Court, the Defendants filed a motion for judgment on the pleadings and moved to make the preliminary injunction permanent.  Abdul Shabazz

---

[5]*Shabazz v. Arkansas Dept. Of Correction, et al.*, EDAR Case No. 5:03cv409-JMM, docket entry # 67, p. 13.

[6]The Honorable James M. Moody

objected, arguing again that the video tapes were inadequate and urging the Court to order the Defendants to permit inmates to deliver the Khutba. The Magistrate Judge[7] recommended that the District Court grant Defendants' motion, issue a permanent injunction, and award the plaintiff $1 for nominal damages. The District Court adopted the Magistrate Judge's recommendation, and the preliminary relief requiring "the ADC (a) to provide all of its units with video recorded Khutbas delivered by a qualified person of its choice; and (b) to allow Muslim inmates to see the video recorded Khutba each Friday, if there is no qualified person acceptable to the ADC who is available to deliver the Khutba live at a unit" became permanent. The injunction remains in place. Abdul Shabazz has filed a notice of appeal challenging, among other issues, the District Court's decision to grant the motion for judgment on the pleadings. *Shabazz v. Arkansas Department of Correction, et al.*, No. 06-03567 (8th Cir. Filed Oct. 13, 2006). However, the Court of Appeals has not yet issued an opinion.

The claim raised by the Plaintiff in this case is identical to the claim raised by Abdul Shabazz and seeks declaratory relief previously denied by the District Court and Eighth Circuit, that is, allowing inmates personally to deliver the Khutba or requiring the ADC to hire free-world Muslim religious leaders to come to all units to conduct services. While the Plaintiff in this case is raising claims under both the First Amendment and

---

[7]The Honorable J. Thomas Ray. The case was reassigned to Judge Ray after remand.

RLUIPA, his First Amendment claim would be evaluated under the less demanding "rationale basis standard" than RLUIPA's more stringent standard. The Eighth Circuit has already applied the more demanding "strict scrutiny" standard to these facts, a standard that is the most favorable standard of review a plaintiff can obtain in any challenge to free exercise of religion, and that Court has denied the requested relief. See *Shabazz v. Arkansas Dept. Of Correction, et al.*, No. 04-3852, 157 Fed.Appx. 944, 2005 WL 3076462 (8th Cir. 2005).

At the September 10, 2007 hearing, Defendants established that they remain in compliance with the permanent injunction entered by the District Court in the prior case. Plaintiff does not dispute the ADC's compliance with the permanent injunction but instead challenges the basis for the injunction. Plaintiff's argument raises only a question of law, which the Eighth Circuit already has considered and rejected. Accordingly, the Court recommends that the District Court deny Plaintiff injunctive relief relating to the Khutba.

    *2.    The Koran*

At the hearing, Plaintiff also alleged that the Policy denies him a basic tenent of his religion by prohibiting him from reading the Koran at the Jumu'a service. The Policy states:

> Jumu'ah Prayer is held Fridays by the Islamic Coordinator or approved free-world volunteer. (See exception under policy 310 and 605)

> <u>Procedures</u>:

> I. That the Islamic Coordinator select inmate(s) at each unit that is knowledgeable of the required prayer ritual and submit the name of the inmate, in writing, to the Unit Warden for approval.
>
> A. This inmate would be responsible for leading the Jumu'ah Prayer (Thuhr) (salat in Arabic) the Unit only [sic]. *This inmate will not be allowed to read from the Quran* or give a Kutbah, only lead the prayer. A recorded Kutbah will be shown following the prayer.

Defendant's Exhibit 1 (emphasis added).

The First Amendment provides that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). A prison regulation is valid, even if it restricts an inmate's constitutional rights, if it is "reasonably related to legitimate penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir.2004) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts evaluating a First Amendment claim must first consider whether the challenged governmental action infringes upon a sincerely held religious belief. *Murphy*, 372 F.3d at 983. Then, the court must apply a reasonableness test "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

While a rational-basis test applies to Plaintiff's constitutional claim, strict scrutiny applies to his claim under RLUIPA, 42 U.S.C. §§ 2000cc *et seq*. RLUIPA provides that no government shall impose a substantial burden on the religious exercises of an inmate,

11

even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1 (2007). A government regulation is a substantial burden when it significantly inhibits or constrains conduct or expression that manifests some central tenet of a person's individual religious beliefs, meaningfully curtails a person's ability to express adherence to a faith, or denies a person reasonable opportunities to engage in religious activities cardinal to a person's religion. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (brackets and citation omitted). Courts must "[a]ccord great deference to the judgment and expertise of prison officials, 'particularly with respect to decisions that implicate institutional security.'" *Murphy*, 372 F.3d at 983 (quoting *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir.2004)). The Court will evaluate Plaintiff's claim under the stricter RLUIPA standard.

The Court notes that the Muslim religion is a legitimate form of religion protected by the First Amendment and RLUIPA, and that Plaintiff is sincere in his practice of and belief in that religion. The Court finds that Jumu'a prayer services are a central element of the Muslim religion, and all Muslims who have taken a declaration of faith must attend and participate in this congregational service each Friday to cleanse them of their sins.

Plaintiff requests that Muslim inmates be allowed to participate in Jumu'a prayer services by reading from the Koran. At the hearing, Chaplain Sensat testified that the

Policy denies inmates the right to read aloud from the Koran at Jumu'a prayer because: (1) a security risk arises when one inmate is placed in a position of authority over other inmates; and (2) when inmates were allowed to read the Koran, there were incidents where they had added content to the printed text, and had read footnotes and commentary as if they were a part of the Koran text.

Applying the stricter RLUIPA standard, the Court finds that the Policy's language prohibiting inmates from reading the Koran at Jumu'a prayer is a substantial burden on Plaintiff's ability to participate in a central element of his religion. The Court acknowledges that the ADC has a compelling interest in institutional security. *Murphy*, 372 F.3d at 988. However, here it is clear from the testimony that Christian inmates *are* allowed to read from the Bible and to lead the choir at Christian services and that Defendants do not consider the reading of this religious text an institutional security risk.

The evidence also demonstrates that under the current Policy an inmate is already selected by the Islamic Coordinator to participate in the service by leading the Jumu'a Prayer. The least restrictive alternative to prohibiting inmates from reading the Koran is to permit the same inmate who is responsible for leading the prayer also to read from the Koran. If the Islamic Coordinator or an approved free-world Muslim volunteer is not

present at Jumu'a prayer, the unit chaplain who supervises the service can follow along as the selected inmate reads from the Koran to insure there is not a deviation from the text.[8]

While deference is due to prison officials' expertise under both RLUIPA and the First Amendment, the evidence shows that Defendants did not select the least restrictive means to achieve their goal.  The Court recommends that the District Court enter an order granting Plaintiff an injunction that requires Defendants to permit Muslim inmates, selected by the Islamic Coordinator to lead Jumu'a Prayer, to read the Koran in Jumu'a Prayer services, just as Christian inmates are permitted to read the Bible aloud in Christian worship services.  It is the Court's opinion that this option is the least restrictive alternative to the current policy.

  3. *The ADC's Hiring Practices*

Plaintiff also argues that the ADC's hiring practices violate his right to free exercise of religion under the First Amendment and RLUIPA because their failure to hire Islamic chaplains denies him access to a live Khutba every Friday.  For the reasons set forth above, the ADC is not required to provide Plaintiff with a live Khutba every Friday. Furthermore, based on the testimony of Chaplain Sensat, the Court finds that the ADC's

---

[8] Chaplain Sensat testified that currently chaplains do not have copies of the Koran and that attempts to obtain copies of the Koran have been unsuccessful.  However, several translations of the Koran are freely accessible via the internet.  See, *e.g.*, www.hti.umich.edu/k/koran/, www.temple.edu/ih/Koran/OnlineTests/indes.htm, and www.islam.tc/quran.  Furthermore, Chaplain Sensat's belief that State funds cannot be used to purchase copies of the Koran for the purpose of ensuring that inmates read passages accurately is misplaced insofar as the United States Constitution is concerned.

hiring practices with respect to chaplains are not discriminatory towards the Plaintiff. According to Chaplain Sensat, chaplains are hired to meet the spiritual needs of all inmates and staff regardless of their religious affiliation. Thus, chaplains at the ADC are hired based on their qualifications and not based on their religious preferences. Chaplain Sensat testified that applicants are never asked about their religious affiliation during the hiring process. The ADC has a valid interest in hiring chaplains based on qualifications and not based on religious preferences. The Court finds that Plaintiff has access to a Khutba either live, when presented by the Islamic coordinator or a CRA, or through a recording. The Court finds this is a reasonable alternative allowing Plaintiff to exercise a basic tenet of his religion without requiring Defendants to make hiring decisions on the basis of religious affiliation.

**B.     Punitive and Nominal Damages**

The Eighth Circuit has held that the limitations on damages for mental or emotional injury in 42 U.S.C. § 1997e(e) apply to all federal prisoner lawsuits alleging First Amendment violations. See *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (concluding that § 1997e(e)'s limits on plaintiff's recovery for mental or emotion injury to nominal and punitive damages and injunctive and declaratory relief applies in First Amendment case). Thus, Plaintiff's recovery is limited to nominal and punitive damages, injunctive and declaratory relief.

Punitive damages may be awarded only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involved reckless or callous indifference to the federally protected rights of others." *Duncan v. Wells*, 23 F.3d 1322, 1324 (8th Cir. 1994), quoting *Walters v. Grossheim*, 990 F.2d 381, 385 (8th Cir. 1993).

At the hearing, Plaintiff did not come forward with any evidence suggesting that Defendants were aware that enforcement of the Policy violated his free exercise rights or that Defendants were motivated by evil intent or that they acted with reckless indifference to Plaintiff's federally protected rights. Accordingly, the Court concludes that Plaintiff is not entitled to punitive damages.

Nominal damages should be awarded whenever a plaintiff establishes a constitutional violation but is unable to establish any actual injury capable of supporting compensatory damages. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); see also *Memphis Cmty. Sch. Dist. V. Stachura*, 477 U.S. 299, 308 n. 11 (1986) (explaining that nominal damages are the "appropriate means of 'vindicating' [constitutional] rights whose deprivation has not caused actual, provable injury").

This Court concludes that Defendants violated Plaintiff's free exercise rights, as protected by the First Amendment and RLUIPA. Plaintiff has not presented any evidence, however, demonstrating actual injury from the violation of his rights which will be corrected by an order of injunctive relief. The Eighth Circuit has ruled that a prevailing plaintiff does not have a right to a jury trial solely on the issue of nominal

damages.  See *Corpus v. Bennett*, 430 F.3d 912, 916-17 (8th Cir. 2006) (holding a district judge did not violate a prisoner's Seventh Amendment right to a jury trial when he reduced a jury's award of $75,000 in nominal damages to $1.00 as a matter of law without giving the prisoner the option of a having a new trial on damages); *Hicks v. Brown Group, Inc.*, 902 F.2d 630, 652 (8th Cir. 1990)(holding that a plaintiff's Seventh Amendment right to a jury trial was not implicated by the district court's additur of $1.00 nominal damages), vacated on other grounds, *Brown Group, Inc. v. Hicks*, 449 U.S. 914 (1991).

Accordingly, the Court recommends that Plaintiff be awarded $1.00 in nominal damages due to the violation of his free exercise rights as protected by the First Amendment and RLUIPA.  See *Corpus*, 430 F.3d at 916 (recognizing one dollar as an appropriate value for nominal damages when a prisoner prevails on a constitutional claim).  The Court also recommends that Plaintiff be awarded $150.00 for reimbursement of filing fees paid to the Court.[9]

## IV.     Conclusion

It is therefore recommended that the District Court: (1) enter a permanent injunction requiring the ADC to permit an inmate, selected by the Islamic Coordinator, to lead Jumu'a Prayer each Friday, to read from the Koran; (2) award Plaintiff $1.00 in

---

[9] At the time this lawsuit was filed, the applicable filing fee was $150.00.

nominal damages; and (3) award Plaintiff $150.00 in costs for his filing fee paid to the Court.

Dated this 13th day of September, 2007.

_____
UNITED STATES MAGISTRATE JUDGE